

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AHERN FIRE PROTECTION, a Division of the J.P. Ahern Co., ) ) ) | |
| Plaintiff, ) ) | No. 06 C 1980 |
| vs. ) ) | Judge Ronald A. Guzmán |
| S/H DATASITE PROTECTION CO., INC. *d/b/a* Stillwell Hansen, ) ) ) | |
| Defendant. ) | |

## MEMORANDUM AND OPINION ORDER

Ahern Fire Protection has sued S/H Datasite Protection Co. ("Datasite") for breach of an escrow agreement. The case is before the Court on defendant's Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss. For the reasons provided in this Memorandum Opinion and Order, the motion is granted.

## The Legal Standard

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## Facts

Datasite was a subcontractor to Nova Corporation ("Nova") on a construction project located at 612 South Clinton in Chicago. (Compl. ¶¶ 2, 5.) Datasite, in turn, subcontracted with Ahern for the fire protection work on the project. (*Id.* ¶ 2.) On December 15, 2002, Nova suspended work on the project indefinitely. (*Id.* ¶ 5.)

After the project was suspended, Ahern and others sought to foreclose their liens against the property. (*Id.*, Ex. B, Escrow Agreement at 1.) Ahern's foreclosure suit also included a claim against Datasite to recover for "work performed or materials supplied to the Property." (*Id.*)

During the foreclosure proceedings, a third-party sought to buy the Clinton property. (*Id.*) However, the property could be sold only if all of the liens were extinguished. (*Id.*) Toward that end, Nova, Datasite and Ahern agreed to issue lien waivers pursuant to an escrow agreement. (*Id.*)

The escrow agreement acknowledges that Datasite sought to recover $398,315.89 from Nova and that Ahern sought to recover $176,382.70 from Datasite. (*Id.*) The agreement states that Ahern, Datasite and Nova would sign the global agreement settling the foreclosure suits so the property could be sold but would do so "without compromising their claims between each other." (*Id.* at 2 & ¶ 1.) The agreement required Nova, upon receipt of funds from the global settlement, to put in escrow funds sufficient to pay Datasite's claim and to release those funds to Datasite when the dispute between them was resolved. (*Id.* at 2 ¶ 2.) Similarly, the agreement required Datasite to leave in the escrow set up by Nova funds sufficient to pay Ahern's claim and to tender

2

those funds "[u]pon resolution of the dispute between [Datasite] and Ahern." (*Id.* at 2 ¶ 4.)

Subsequently, Nova deposited $587,659.18 into an escrow account and directed that the funds be paid, less a $45,000.00 "restocking fee," to Datasite's attorneys. (Compl. ¶¶ 13-16.) The attorneys paid Datasite a total of $359,634.10, leaving a balance of more than $182,000.00 in escrow. (*Id.* ¶ 18 & Ex. D, Escrow Account Statements.)

Ahern contends that Nova's payment to Datasite triggered Datasite's obligation to give the remaining money to Ahern and its failure to do so breached the agreement.

### Discussion

Whether Datasite's failure to give the escrow funds to Ahern breached the agreement depends on the meaning of the following provision:

> If [Datasite] has not resolved its differences with Ahern prior to [Datasite] and Nova resolving their differences, then [Datasite] shall leave in the escrow set up by Nova an amount that shall not exceed the Percentage Amount multiplied by $176,382.70. Upon resolution of the dispute between [Datasite] and Ahern, any remaining funds in the escrow shall be distributed between them accordingly. Ahern's recovery, if any, shall be no greater than the amount placed in escrow.

(Compl., Ex. B, Escrow Agreement at 2 ¶ 4.)

To determine the meaning of that provision, we must examine the agreement as a whole and give its terms their ordinary meanings. *Lewis X. Cohen Ins. Trust v. Stern*, 696 N.E.2d 743, 751 (Ill App. Ct. 1998). If the agreement is unambiguous, we must determine its meaning "solely from [its] plain language." *Id.* (quotation omitted).

The parties agree that the contested provision is unambiguous, but they interpret it quite differently. Ahern contends that the intent of the provision was to protect Datasite

3

from paying Ahern for work that Nova rejected. If Nova claimed a set-off from Datasite's bill for Ahern's poor performance, Datasite could make a corresponding reduction in its payment to Ahern. But, Ahern says, if Nova paid Datasite in full for Ahern's work, then that provision requires it to pay Ahern's claim immediately and in full.

Datasite, of course, disagrees. It says that the disputed provision requires it to pay Ahern only after the two have determined, voluntarily or otherwise, the amount, if any, Datasite still owes Ahern for its work on the project.

The Court agrees with Datasite. The contested provision explicitly says that Datasite's obligation to pay Ahern is triggered by the resolution of their dispute, *i.e*, Ahern's $176,382.70 claim, not by Nova's payment to Datasite. (*See* Compl., Ex. B, Escrow Agreement at 3 ¶ 4 ("Upon resolution of the dispute between [Datasite] and Ahern, any remaining funds in the escrow shall be distributed between them accordingly."); *id.* at 1 (noting that Ahern "has filed suit against [Datasite] . . . for claims allegedly arising from work performed or materials supplied to the Property" and that "Ahern seeks to recover from [Datasite] $176,382.70").) The agreement says nothing about set-offs by Nova or the impact, if any, that Nova's payment to Datasite would have on Ahern's claim. Further, the agreement contains neither an admission by Datasite that Ahern's claim is valid nor a waiver of its right to contest the claim, as Ahern's interpretation assumes. On the contrary, it clearly states that Datasite makes no admission of liability. (*Id.* at 3 ¶ 5 ("Nova, Datasite and Ahern . . . acknowledge that this Agreement shall not constitute an admission of fault or liability in connection with any

controversy, claim or lawsuit.").) In the face of the agreement's plain and unambiguous language, Ahern's interpretation is simply untenable.

In short, the escrow agreement does not require Datasite to pay Ahern's claim as soon as it receives payment from Nova. Thus, Datasite's failure to do so does not breach the agreement. Moreover, because plaintiff does not, and presently cannot, allege that the actual condition precedent to Datasite's payment obligation – the resolution of Ahern's claim – has occurred, Ahern has no viable claim for breach of the escrow agreement.

## Conclusion

For the reasons set forth above, Datasite's motion to dismiss [doc. no. 9] is granted and this case is dismissed without prejudice.

**SO ORDERED.**                                     **ENTERED:**

JUL 2 7 2006

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**